FILED
APR 2 0 2011

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

NORTHWEST ENVIRONMENTAL
DEFENSE CENTER,

Civ. No.10-1129-AC

OPINION AND
ORDER

Plaintiff,

v.

UNITED STATES ARMY CORPS OF
ENGINEERS *et al.*,

Defendants.

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Northwest Environmental Defense Center ("NEDC") brought an action against the

United States Army Corps of Engineers ("Corps") and the National Marine Fisheries Service

("NMFS") (collectively, "Defendants"), seeking declaratory and injunctive relief against certain

meeting and planning activities of the Defendants that occurred in Oregon. The action was filed in

the Portland Division of the District of Oregon. Presently before the court is Defendants' motion to reassign the case to the Medford Division. For the reasons set forth below, the court DENIES Defendants' motion to reassign.

*Background*

NEDC's complaint makes two general allegations: that the Corps held planning meetings in violation of the Federal Advisory Committee Act ("FACA"), 5 U.S.C. App 2 (1997), and that one outcome of those meetings was a mining plan that, among other things, violates the Endangered Species Act ("ESA"). 16 U.S.C. § 1531 (2008). NEDC's complaint seeks a declaratory judgment that the meetings violated FACA and an injunction against any future meetings in violation of FACA. Plaintiff also requests that the court issue a permanent injunction to prevent the Corps from implementing the mining plan that resulted from the challenged meetings.

FACA was established to "eliminate useless advisory committees, strengthen independence of remaining advisory committees, and prevent advisory groups from becoming self-serving." *Consumers Union of U.S., Inc. v. Dep't of Health, Educ. and Welfare,* 409 F. Supp. 473, 474 (D.D.C. 1976), affirmed 551 F.2d 466 (D.C. Cir. 1977). Advisory committees should be convened only when "determined to be essential," and should be "kept to the minimum necessary." 5 U.S.C. App 2 § 2(b)(2). Legislation that establishes advisory committees must ensure that the committees are "balanced in terms of points of view represented," and that recommendations of the committee are not induly influenced by any "special interest." 5 U.S.C. App 2 § 5(b)(2-3). Advisory committees should operate under uniform procedures, and the public should be kept informed as to their "number, purpose, membership, activities and cost." 5 U.S.C. App 2 §§ 4-5. Committees operating under FACA must file a charter with the head of the agency they advise, give advance notice in the

Federal Register of any meeting, and make transcripts of their proceedings available to the public. 5 U.S.C. App 2 §§ 9(c), 10(b), 11(a). Advisory committee meetings must be open to the public. 5 U.S.C. App 2 §§ 10(a)(1).

NEDC's core assertion regarding FACA is that Defendants organized and held private meetings to develop a plan for gravel mining in Oregon's rivers, that these meetings should have been organized under FACA, and that in any event the meetings were carried out in violation of FACA policies. (Pl. Compl. for Decl. & Inj. Relief ("Complaint") ¶¶ 39-54.) These meetings included representatives of federal and state agencies, and representatives of the mining industry. *Id.* NEDC alleges that these groups, which came to be known as the Executive Team and the Technical Team, were "clearly subject to FACA's requirements." *Id.* ¶ 47. NEDC recites a number of specific dates on which the teams met, and Defendants do not dispute that these meetings took place. NEDC alleges that a substantial portion of these meetings took place at Corps headquarters in Portland, and offers documents supporting that allegation. (Pl.'s Resp. in Opp'n ("Response") (Docket #6) Ex. B Attach. 3-18.)

NEDC further alleges that, as a result of the challenged meetings, a plan was developed to mine the Chetco River and other rivers in Oregon. (Complaint ¶¶ 56-62.) NEDC alleges that the plan for mining the Chetco River is meant to "serve as a model for evaluating other river systems." *Id.* ¶ 54. NEDC alleges that the method for arriving at the Chetco plan, and the plan itself, give rise to numerous violations of the ESA. *Id.* ¶¶ 83-106. NEDC asks the court to declare that these activities violated, and continue to violate, the ESA, and asks that the court set aside the plan that resulted from the challenged meetings.

Defendants timely filed a motion to reassign venue to the Medford division. Defendants

OPINION AND ORDER                                    3                                    {LW}

maintain that the heart of NEDC's complaint concerns plans for gravel mining on the Chetco

River, and that the acts or omissions alleged to have taken place in Portland are tangential to the

matter. (Fed. Def. Mem. Supp. Mot. to Reassign ("Motion to Reassign") 1, 4.) Defendants urge

the court to focus on the portion of the local rule that designates the location of the "property . . .

that is the subject of the action" as determinative of venue. (Motion to Reassign 2.) Pointing out

that the Chetco River is located entirely in the Medford division, Defendants ask the court to

reassign the case to Medford on that basis.

*Legal Standards*

This court's jurisdiction over the matter is uncontested. Federal jurisdiction is proper here

because the actions alleged arise under the laws of the United States, and because the defendants are

federal agencies. 28 U.S.C. § 1331; Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*

Venue is proper in the District of Oregon under the federal rules that govern assignment of

venue among the federal judicial districts. 28 U.S.C. § 1391(e) (2002). Where the federal court has

jurisdiction, a plaintiff may assert venue in "any judicial district in which (1) a defendant in the

action resides, [or] a substantial part of the events or omissions giving rise to the claim occurred, or

a substantial part of property that is the subject of the action is situated." *Id.* Because all the events

are alleged to have taken place in the state of Oregon, venue in the District of Oregon is proper. The

parties contest, however, the divisional venue in which this case should be filed and heard.

Divisional venue, the issue disputed here, is analyzed under three distinct but related

authorities: The Federal Rules of Civil Procedure, the Local Rules of the District of Oregon, and the

statutes governing federal judicial procedure, 28 U.S.C. §§ 1391, 1404 and 1406. While Defendants

rely primarily on precedent under this district's Local Rules in their argument for change of venue,

the court evaluates all three authorities to determine the proper location for advancement of the case.

Under Federal Rule of Civil Procedure 12(b)(3), ("Federal Rule") while the plaintiff makes the initial choice of where to file a suit, the defendant may challenge the plaintiff's choice of venue as an affirmative defense. FED. R. CIV. P. 12(b)(3). A venue defense must be asserted in a responsive pleading, and is waived if the defendant fails to make the motion under the rule. *Id.* 12(h). In adjudicating a 12(b)(3) motion, the court draws all reasonable inferences in favor of the non-moving party and resolves all factual conflicts in favor of the non-moving party. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004).

The District of Oregon's Local Rules ("Local Rules") also govern assignment of venue. A judicial district is empowered by federal statute and Federal Rule 83 to make local rules. *See* 28 U.S.C. § 137 ("The business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court") and FED. R. CIV. P. 83(a)(1) ("[a] district court . . . may adopt and amend rules governing its practice."). The Ninth Circuit accords broad deference to the district court's interpretation of local rules. *Jacobson v. Hughes Aircraft Co.*, 105 F.3d 1288, 1302 (9th Cir. 1997) (reversed on other grounds) (citing *U.S. v. Mouzin*, 785 F.2d 682, 695 (9th Cir. 1986)).

Local Rule 3-2 divides the District of Oregon into four divisions to "distribute the judicial work and to align counties for juror management purposes." LR 3-2(a). These divisions, which encompass all Oregon counties, are Portland, Pendleton, Eugene, and Medford. Parties are instructed that their pleading must identify the division where venue lies; i.e., "the division in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part

of the property that is the subject of the action is situated." LR 3-2(b). This "substantial part" language follows exactly the analogous portion of the federal venue statute. 28 U.S.C. § 1391(e). Parties are further instructed that "[c]ases where the divisional venue lies within . . . Portland . . . must be filed in Portland," and that "[c]ases where divisional venue lies within the Medford Division must be filed in Medford." LR 3-3(a). Should a party initially file a case in the wrong division, the Court may reassign the case "on its own motion or that of any party." LR 3-3(c).

The court additionally looks for guidance in two federal judicial procedure statutes. 28 U.S.C. § 1404, 28 U.S.C. § 1406(b). The first statute governs motions for "convenience" transfers, which arise when venue is proper in either of two forums, but one party prefers a given forum for reasons of convenience. 28 U.S.C. § 1404. The statute places discretion in the district court to evaluate convenience transfers on an "individualized, case-by-case" basis for convenience and fairness, in the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23 (1988). The court considers multiple factors, such as:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Fin.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

The second federal venue statute concerns "wrong court" transfers, which arise when an opposing party maintains that venue is improper in the original filing forum. 28 U.S.C. § 1406(b). In "wrong court" cases, the district court must either dismiss the case or direct its transfer to the proper forum. *Id.* The plaintiff has the burden of showing that the case is filed in the proper venue.

OPINION AND ORDER                   6                   {LW}

*Piedmont Label Co. v. Sun Garden Packing Co.,* 598 F.2d 491, 496 (9th Cir. 1979).

*Discussion*

The gravamen of Plaintiff's complaint is that, by failing to charter the advisory committees, holding meetings that included industry representatives but not the public and other interested parties, failing to provide public notice of the meetings, and failing to make advisory committee materials available to the public, Defendants violated the requirements of FACA. Additionally, Plaintiffs assert that the Chetco River mining plan that resulted from the meetings engendered multiple violations of the ESA. Because the challenged meetings largely took place in Portland, Plaintiffs assert that venue in the Portland division is appropriate.

Defendants claim that because the Chetco River mining recommendations that arose from the meetings are planned to take place in the Medford area, venue in that division is appropriate; and that under precedent established by this court, Medford venue is indeed mandatory.

The precise issue presented here appears to be one of first impression. As Defendants correctly point out, the Local Rule has been interpreted by judges of this court to mandate transfer to the geographic division where the challenged agency decisions were to be carried out, even though some or all of the decision making process took place in Portland. However, this case differs from the cited precedents because of the complaint's particular allegations and asserted cause of action, which focus on a meaningful, independent process violation, in addition to concerns about the outcome of the challenged processes. The degree to which alleged violations of mandated agency decision-making processes constitute "substantial" acts or omissions in the venue is not an issue that was analyzed in the cases Defendants rely upon, nor do the cases assert independent process violations alleged to have taken place in Portland. In all the cases cited by Defendants, the

OPINION AND ORDER                    7                    {LW}

administrative agency in question was situated in Portland, and the decision challenged was to be effectuated elsewhere in Oregon.  In each case, the judge interpreted the local rule to require the case to be heard in the location where the agency action was to be carried out.

The foundational case relied upon by Defendants is *Or. Natural Res. Council Fund v. Goodman*, in which Judge King declared that Rule 3 is a "mandatory requirement" under which a case must be transferred if it was brought in the wrong division. *(Goodman,* Civil No. 04-593-AS (D. Or. May 26, 2004) Transcript of Telephone Hearing, Dkt. No. 32 at 8.) (Fed. Def.'s Mot. To Reassign, Ex. 1.)  In *Goodman*, the plaintiff challenged a United States Forest Service ("USFS") decision to authorize a post-fire salvage timber sale in portions of the national forest that are located in Klamath and Lake Counties, both of which are located in the Medford division.  The plaintiff filed the action in Portland because all the parties were located in Portland, and because the decision to authorize the logging had been made at the U.S. Forest Service office in Portland.  The plaintiff argued for Portland venue on the basis of convenience, and because it alleged that the Forest Service decision constituted an "informational injury" that arose in Portland where the plaintiffs were located and where the decision took place.

In *Goodman*, all of the harms that allegedly arose from the Portland meetings would be suffered in the national forests in Lake and Klamath counties.  The plaintiff claimed that the logging plan relied on a model for diversity planning that was inappropriate for a post-burn forest such as the one in question; that the plan would result in too few snags remaining in the forest; and that USFS had failed to develop a restoration-only alternative for the post-burn forest in question.  Judge King found nothing in the pleadings that indicated the court should make an exception from the mandatory requirement that cases arising in Medford be filed in Medford, and accordingly

transferred the action to the Medford division.

The *Goodman* pleadings make no allegations regarding specific components of agency actions that tie the actions to Portland, beyond recognizing that the Regional Forester who made the decision was headquartered in Portland. Upon questioning by Judge King, the plaintiff's attorney stated that the case was filed in Portland because the plaintiff and the defendant were located there. (*Goodman*, Civil No. 04-593-AS (D. Or. May 26, 2004) Transcript of Telephone Hearing, Dkt. No. 32 at 3-4.) (Fed. Def.'s Mot. To Reassign, Ex. 1.) During this conversation, the plaintiff's attorney raised the issue of the "informational injury" to the plaintiff having arisen at the place where the plaintiffs are located; however, this issue does not appear in the original complaint and is not developed in Judge King's analysis.

Subsequent cases in the district followed Judge King's reasoning and transferred cases involving agency decisions to the division where the decision would be implemented. In *Or. Natural Res. Council Fund v. Brong*, Civil No. 04-693-AA, Judge Haggerty transferred to Medford a case involving a Bureau of Land Management decision to implement a timber sale in Southern Oregon. (Fed. Def.'s Mot. To Reassign, Ex. 2.) Defendants were located in Portland, and the agency decision had been made in Portland, but the burden of the harms alleged would be suffered in Medford. Similarly, in *Pearson v. U. S. Dept. of Transp.*, Civil No. 07-272-PA, 2009 WL 464469 (D. Or. Feb 24, 2009), Chief Judge Aiken granted the defendant's motion to reassign to Medford. (Fed. Def.'s Mot. To Reassign, Ex. 3.) The agency's decision, which was made in Portland, concerned a highway interchange to be built in the Medford division.

In *Siskiyou Reg. Educ. Project v. U. S. Forest Serv.*, Civil No. 05-1429-CO, 2005 WL 2675114 (D. Or. Dec. 19, 2005), Judge Ashmanskas granted a transfer to Medford. The challenged

decision, to carry out a timber sale in Josephine County, was made by the U.S. Forest Service at their office in Portland. Transfer was also granted in *Grain Millers v. Pac. Flexpak,* No. 07-1065, 2008 WL 550124, at *3 (D. Or. Feb. 26, 2008), where Judge Ashmanskas found that in contract disputes the "location of intended performance generally determines proper venue." While *Grain Millers* did not concern an agency action as in the cases above, the court's analysis of the "factual connection of [plaintiff's] claims to events occurring in the Eugene Division" warranted transfer from Portland to Eugene. *Id.*

In contrast, the pleadings here contain allegations and prayers for relief that identify specific acts or omissions that demonstrably took place in Portland. If NEDC contended only that the Chetco mining plan was the result of meetings that took place in Portland, the Local Rule's mandate would require the case be reassigned to Medford; the substantive harm alleged by NEDC would result primarily from carrying out in Medford plans made in Portland, and venue would be proper in Medford. However, because NEDC challenges the legality under FACA of the Portland meetings themselves, and pleads with specificity its allegations regarding those meetings, the pleadings here concern actions in Portland which are separate and distinct from the Medford plans. The Portland meetings are alleged to have violated a federal law, the purpose of which is to prohibit the precise injuries NEDC alleges occurred here. Thus, the venue dispute provides an issue of first impression for this district.

Similar venue challenges, involving the process of agency decision-making, have been heard by courts in other districts. In *Freeman v. Fallin*, 254 F. Supp. 2d 52 (D.D.C. 2003), former federal employees brought a *Bivens* action against their former employers, alleging that the employers manipulated random drug testing in order to target plaintiffs. The plaintiffs alleged that the

OPINION AND ORDER                               10                               {LW}

employers' conspiracy involved discussions regarding design, administration and scheduling of the plaintiffs' tests, and that these discussions took place at the employer's headquarters in the District of Columbia. The court dismissed a venue challenge by the agency, finding venue proper where "conspiring, planning, or supervision of an event occurred, even if the event itself took place in another judicial district." *Freeman,* 254 F. Supp 2d at 57.

A court in the Eastern District of Pennsylvania declined to transfer venue in a case brought against the State Department in *Egervary v. Young*, 159 F. Supp. 2d. 132 (D. Pa. 2001) (reversed on other grounds). In *Egervary*, a father brought a *Bivens* action against federal agents alleged to have assisted in his estranged wife's international abduction of their son. Egervary alleged that State Department agents arranged to allow his son to be removed from the country without a passport. The court found venue proper in the Eastern District of Pennsylvania, where the State Department officials were located, even though the abduction took place in the Middle District. Venue was appropriate in the Eastern District because that is where State Department officials "made arrangements" to waive the passport requirements.

In *Northwest Forest Resource Council v. Babbitt*, 1994 WL 908586 (D.D.C. 1994) (not Reported in F.Supp.), the plaintiff challenged three aspects of a rulemaking decision by which the United States Fish and Wildlife Service ("FWS") declared the marbled murrelet (a bird found in the Pacific Northwest) to be a threatened species. The defendant agency was sued in the District of Columbia, where it was located. The court found that venue was proper in both the District of Columbia, where the rulemaking decision was made, and in the Western District of Washington, where there was ongoing litigation involving substantially similar issues.

In the cited cases, where the process violation is alleged to have taken place in a district other

OPINION AND ORDER                                     11                                     {LW}

than the one where the decision was ultimately carried out, courts may find that "a substantial part of the events or omissions giving rise to the claim" occurred in both places. The Ninth Circuit has held that, under § 1391, "the substantiality of the operative events is determined by assessment of their ramifications for efficient conduct of the suit." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001), quoting *Lamont v. Haig*, 590 F.2d 1124, 1134-35 (D.C.Cir.1978). In *Myers*, "at least one of the harms suffered by [p]laintiff" had taken place in Nevada, where venue was sought; accordingly the Court found that venue was proper because a substantial part of the events giving rise to the claim had occurred there. *Id.* Cases from other circuits have found that "venue is not limited to the district with the *most* substantial events or omissions . . . [rather] § 1391(a)(2) contemplates that venue can be appropriate in more than one district." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010) (internal citations omitted) (emphasis in original).

In another case challenging venue, the First Circuit found that the court was not required to determine the best venue, only a proper venue; it held that venue "could be found" in Rhode Island, where one of the harms in a trade secret case was alleged to have occurred, even though the parties were residents of California and Florida. *Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1 (1st Cir. 2009). As one commentator states, "If the selected district's contacts are 'substantial', it should make no difference that another's are more so, or the most so." Siegel, Commentary on 1990 Revision of Subdivisions (a), (b) and (e), 28 U.S.C.A. § 1391 (1991)," cited in *Merchants Nat. Bank v. Safrabank* (California) 776 F.Supp. 538, 541 (D.Kan.1991).

Once it is established that the plaintiff's choice of forum is proper under the "substantial part" test, the "convenience" factors under 1404(a) must operate strongly in the moving party's favor in

OPINION AND ORDER                         12                              {LW}

order to overcome the presumption in favor of the plaintiff's choice of forum.   *Piper Aircraft v. Reyno*, 454 U.S. 235, 255 (1981).  Under § 1404(a), the "convenience" statute, the defendant must make a "strong showing of inconvenience to upset the plaintiff's choice of venue."  *Decker Coal v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Factors that the court considers in evaluating inconvenience include private factors, such as ease of access to witnesses and sources of proof, and convenience to the parties, and public factors, such as familiarity of the forum with applicable law, and "local interest in having localized controversies decided at home."  *Id.*

Here, NEDC's allegations concern regularly scheduled meetings that took place in Portland. The occurrence of the meetings themselves is alleged to violate a federal statute.  In addition, the parties involved in the meetings, the content of the meetings and actions taken subsequent to the meetings, are all alleged to violate the federal statute.  The Chetco plan is only one of the contemplated results of those meetings.  Plaintiff alleges that mining plans developed at the Portland meetings would ultimately be executed in every region of the state, a further argument for administration of the proceedings in the Portland division.  Plaintiff's choice of Portland as the location where a substantial part of the events giving rise to the claim occurred is supported by the allegations.

Under these circumstances, it comports with both the convenience of the parties and the interests of justice to retain venue in Portland. As far as the court can discern, none of the cited "inconvenience" factors operates to override Plaintiff's choice of Portland as the proper forum for the case.  Indeed, all parties associated with the case are located in Portland, many of the witnesses and much of the evidence associated with the case would be located in Portland, and because Corps' decision that resulted from the meetings would have its impact statewide, there is no other forum in

OPINION AND ORDER                              13                                  {LW}

Oregon that is inherently preferable in terms of convenience.  Accordingly, under the 1404(a) analysis, the motion to transfer to Medford does not succeed.

Nor does the § 1406 "wrong court" analysis operate in Defendants' favor. The wrong court analysis applies only when venue is improper in the first instance. *Grain Millers,* 2008 WL 550124, at *2.  If an action is initially filed in the wrong venue, the court is "required to dismiss the action or transfer it to a judicial district or division where venue is authorized." *Garvey v. Piper Rudnick LLP Long Term Disability Ins. Plan*, No. 07-886, 2008 WL 410088, at *3 (D. Or. Feb 12, 2008). Under § 1406, transfer may be granted as an alternative to dismissal, but in either case the disposition is predicated on initial filing in an improper venue. 28 U.S.C. 1406(a).  Because the court has determined that Plaintiff's filing in Portland is not improper, none of the considerations guiding § 1406 transfer is applicable in this case.

As for the portion of the complaint that concerns agency actions to be effectuated in the Medford division, it is within this court's discretion to retain jurisdiction; LR 3-4 states that the Court "may" reassign the case.  The court sees no compelling reason to transfer on the basis of the portions of the pleading that allege acts or omissions in Medford, since all those allegations relate back to the challenged meetings that took place in Portland.

Finally, Defendants observe that the Executive Team and Technical Team were disbanded one month after Plaintiff's initial filing.  Defendants argue that this development renders irrelevant NEDC's arguments that venue is appropriate in Portland.   (Reply in Support of Fed. Mot. To Reassign Case to the Medford Division, Dkt. No. 7, Ex. 1.)  Defendants have supplied the court with a copy of the letter sent by the Corps to the Team members, which indicates that the Corps is "considering" forming new teams, and that "any future team with be created in compliance with .

OPINION AND ORDER                          14                          {LW}

. . [FACA]." *Id.* Ex. 1 at 1. This letter might be taken as an accession to Plaintiff's original demand that the court enjoin the Corps from continuing to engage in a pattern and practice of violating FACA. (Complaint 28.) However, the assertion that disbanding the Teams vitiates the Portland locus of Plaintiff's complaint ignores ten other prayers for relief, including that the court "declare that the Corps *has* violated FACA with respect to the Team[s]; . . . order the Corps to publicly release all materials related to the Team[s]; . . . [and] enjoin the Corps from using, or relying on, any information produced by or recommendations received from . . . the Team[s]." (Complaint, Prayer for Relief ¶¶ 1, 3-4 (emphasis added).) These prayers for relief do not cease to be relevant simply because the Teams have disbanded, and the fact of disbanding does not influence the venue conclusions under any of the previous analyses.

Because Plaintiff's choice of venue in the Portland division is not improper under the federal and local rules or federal venue statutes, Defendants' motion to reassign venue to the Medford division (#4) is DENIED.

DATED this 20th day of April, 2011.

JOHN V. ACOSTA
United States Magistrate Judge